get the profitable vials, I do have 15 boxes of the 150mg Herceptin I can use."

l. On or about April 6, 2023, defendant BENJAMIN LOUSTAUNAU picked up foreign unapproved drugs at the house of defendant MOHAMMAD RAY KHAN.

m. On or about April 17, 2023, in response to an email about how SBCC lost money from using Zoladex on a patient since the reimbursement from Medicare and Medi-Cal was less than the cost of purchasing the drug from domestic drug wholesalers, defendant JOSHUA SCHWASS emailed defendant BENJAMIN LOUSTAUNAU and others, "We are losing even getting it from the outside source?"

## Counts 2-9

### Smuggling Drugs Into the United States Contrary to Law

### (18 U.S.C. § 545)

46. Paragraphs 1 through 45 are realleged and incorporated by reference.

47. On or about the dates listed in the table below, within the Southern District of California, and elsewhere, the defendants listed in the table below did fraudulently and knowingly import and bring into the United States merchandise, that is, drugs, as further described in the table below, contrary to law, in that:

a. The introduction and delivery for introduction into interstate commerce of unapproved new drugs with intent to defraud and mislead as to a material matter, that is to defraud and mislead Medicare and Medi-Cal by presenting claims based on FDA-approved versions of drugs, and mislead patients into believing they were receiving FDA-

approved drugs, is contrary to Title 21, United States Code, Sections 331(d), 333(a)(2), and 355(a).

b. The introduction and delivery for introduction into interstate commerce of misbranded drugs, that is with words, statements, and other information required by and under authority of [the FDCA] to appear on the label and labeling not prominently placed thereon with such conspicuousness (as compared with other words, statements, designs, or devices, in the labeling) and in such terms as to render it likely to be read and understood by the ordinary individual under customary conditions of purchase and use, without adequate directions for use, and imported by a commercial importer not duly registered with the Secretary of HHS, with the intent to defraud and mislead as to a material matter, that is to defraud and mislead Medicare and Medi-Cal by presenting claims based on FDA-approved versions of drugs, and mislead patients into believing they were receiving FDA-approved drugs, is contrary to Title 21, United States Code, Sections 331(a) and 333(a)(2).

| Count | Defendants | Approximate Date | Foreign Non-FDA-Approved Drug Brand Name | Size/Amount | Nonproprietary/Generic Name | Brand Name of FDA-Approved Version |
|---|---|---|---|---|---|---|
| 2 | SUKHJIT SINGH GHUMAN aka "Sukhi" <br><br> KIRANJIT GHUMAN aka "Kiran" | 9/3/19 | Strantas | 20 50-mg kits | Fulvestrant | Faslodex |

| | | | | | | |
|---|---|---|---|---|---|---|
| 3 | SUKHJIT SINGH GHUMAN aka "Sukhi" KIRANJIT GHUMAN aka "Kiran" | 9/3/19 | Pegasta | 9 6-mg kits | Pegfilgrastim | Neulasta |
| 4 | SUKHJIT SINGH GHUMAN aka "Sukhi" KIRANJIT GHUMAN aka "Kiran" | 9/3/19 | Endoxan-N | 9 1-gm vials | Cyclophosphamide | Cytoxan |
| 5 | SUKHJIT SINGH GHUMAN aka "Sukhi" KIRANJIT GHUMAN aka "Kiran" MOHAMMAD RAY KHAN | 8/10/21 | Apritax | 20 150-mg vials | Fosaprepitant | Emend |
| 6 | SUKHJIT SINGH GHUMAN aka "Sukhi" KIRANJIT GHUMAN aka "Kiran" MOHAMMAD RAY KHAN | 8/10/21 | Ristova | 14 500-mg vials | Rituximab | Rituxan |
| 7 | SUKHJIT SINGH GHUMAN aka "Sukhi" KIRANJIT GHUMAN aka "Kiran" BENJAMIN LOUSTAUNAU JOSHUA SCHWASS | 4/13/23 | Bryxta | 8 400-mg vials | Bevacizumab | Mvasi |

23

| | | | | | | |
|---|---|---|---|---|---|---|
| 8 | SUKHJIT SINGH GHUMAN aka "Sukhi" KIRANJIT GHUMAN aka "Kiran" BENJAMIN LOUSTAUNAU JOSHUA SCHWASS | 4/13/23 | Augplat | 5 250-mcg vials | Romiplostim | Nplate |
| 9 | SUKHJIT SINGH GHUMAN aka "Sukhi" KIRANJIT GHUMAN aka "Kiran" BENJAMIN LOUSTAUNAU JOSHUA SCHWASS MOHAMMAD RAY KHAN | 4/20/23 | Fulzos | 4 250-mg kits | Fulvestrant | Faslodex |

all in violation of Title 18, United States Code, Sections 545 and 2, and *Pinkerton v. United States*, 328 U.S. 640 (1946).

## Counts 10-17

### Introduction of Unapproved New Drugs Into Interstate Commerce

### (21 U.S.C. §§ 331(d), 355(a), and 333(a)(2))

48. Paragraphs 1 through 47 are realleged and incorporated by reference.

49. On or about the dates listed in the table below, within the Southern District of California and elsewhere, the defendants listed in the table below, with the intent to defraud and mislead as to a material

matter, that is to defraud and mislead Medicare and Medi-Cal by presenting claims based on FDA-approved versions of drugs, and mislead patients into believing they were receiving FDA-approved drugs, introduced and delivered into interstate commerce, and caused to be introduced and delivered into interstate commerce, new drugs that were in violation of Title 21 United States Code, Section 355, in that they were not the subject of an approved NDA or ANDA on file with FDA, that is, the drugs specified in the table below:

| Count | Defendants | Approximate Date | Foreign Non-FDA-Approved Drug Brand Name | Size/Amount | Nonproprietary /Generic Name | Brand Name of FDA-Approved Version |
|---|---|---|---|---|---|---|
| 10 | SUKHJIT SINGH GHUMAN aka "Sukhi" KIRANJIT GHUMAN aka "Kiran" | 9/3/19 | Strantas | 20 50-mg kits | Fulvestrant | Faslodex |
| 11 | SUKHJIT SINGH GHUMAN aka "Sukhi" KIRANJIT GHUMAN aka "Kiran" | 9/3/19 | Pegasta | 9 6-mg kits | Pegfilgrastim | Neulasta |
| 12 | SUKHJIT SINGH GHUMAN aka "Sukhi" KIRANJIT GHUMAN aka "Kiran" | 9/3/19 | Endoxan-N | 9 1-gm vials | Cyclophosphamide | Cytoxan |

25

| | | | | | | |
|---|---|---|---|---|---|---|
| 13 | SUKHJIT SINGH GHUMAN aka "Sukhi"<br><br>KIRANJIT GHUMAN aka "Kiran"<br><br>MOHAMMAD RAY KHAN | 8/10/21 | Apritax | 20 150-mg vials | Fosaprepitant | Emend |
| 14 | SUKHJIT SINGH GHUMAN aka "Sukhi"<br><br>KIRANJIT GHUMAN aka "Kiran"<br><br>MOHAMMAD RAY KHAN | 8/10/21 | Ristova | 14 500-mg vials | Rituximab | Rituxan |
| 15 | SUKHJIT SINGH GHUMAN aka "Sukhi"<br><br>KIRANJIT GHUMAN aka "Kiran"<br><br>BENJAMIN LOUSTAUNAU<br><br>JOSHUA SCHWASS | 4/13/23 | Bryxta | 8 400-mg vials | Bevacizumab | Mvasi |
| 16 | SUKHJIT SINGH GHUMAN aka "Sukhi"<br><br>KIRANJIT GHUMAN aka "Kiran"<br><br>BENJAMIN LOUSTAUNAU<br><br>JOSHUA SCHWASS | 4/13/23 | Augplat | 5 250-mcg vials | Romiplostim | Nplate |

| | | | | | | |
|---|---|---|---|---|---|---|
| 17 | SUKHJIT SINGH GHUMAN aka "Sukhi" KIRANJIT GHUMAN aka "Kiran" BENJAMIN LOUSTAUNAU JOSHUA SCHWASS MOHAMMAD RAY KHAN | 4/20/23 | Fulzos | 4 250-mg kits | Fulvestrant | Faslodex |

all in violation of Title 21, United States Code, Sections 331(d), 355(a), and 333(a)(2), and Title 18, United States Code, Section 2, and *Pinkerton v. United States*, 328 U.S. 640 (1946).

## Count 18

### Conspiracy to Commit Health Care Fraud

### (18 U.S.C. § 1349)

50. Paragraphs 1 through 49 are realleged and incorporated by reference.

51. Beginning no later than September 2019 and continuing through in or around April 2023, within the Southern District of California, and elsewhere, defendants SUKHJIT SINGH GHUMAN, aka "Sukhi", KIRANJIT GHUMAN, aka "Kiran", MOHAMMAD RAY KHAN, JOSHUA SCHWASS, and BENJAMIN LOUSTAUNAU, conspired and agreed with each other and with others known and unknown to the Grand Jury to commit health care fraud, that is, to knowingly and willfully execute a scheme and artifice to defraud a health care benefit program, as defined in Title 18, United States Code, Section 24(b), that is, Medicare and Medi-Cal, and to obtain money and property owned by and under the custody and control of Medicare and

Medi-Cal, by means of materially false and fraudulent pretenses, representations, and promises, in connection with the delivery of and payment for health care benefits, items and services, in violation of Title 18, United States Code, Section 1347.

### Object of the Conspiracy

52. The object of the conspiracy was for defendants to unlawfully enrich themselves by defrauding Medicare and Medi-Cal by causing the submission of materially false and fraudulent claims for services.

### Manner and Means of the Conspiracy

53. The conspirators used the following manner and means, among others, in pursuit of their fraudulent purpose:

   a. Defendants illegally imported and received in interstate commerce non-FDA-approved drugs manufactured in foreign countries intended for use in countries other than the United States, including India, Sri Lanka, and Turkey.

   b. Defendants purchased foreign unapproved drugs cheaper than they could have from domestic sources to increase the profit derived by payments from Medicare and Medi-Cal.

   c. Defendants did not inform the patients being treated at SBCC and AZCC that foreign unapproved drugs were being injected into their bodies.

   d. Defendants submitted, or caused to be submitted, reimbursement claims to Medicare and Medi-Cal that falsely and fraudulently represented that the patients identified in the claims received FDA-approved drugs, when the defendants knew the patients had received foreign-sourced, non-FDA-approved drugs, and further knew that Medicare and Medi-Cal would not pay for non-FDA-approved drugs.

  e. Defendants submitted claims to Medicare and Medi-Cal listing CPT codes for the injection of FDA-approved drugs when, in fact, foreign unapproved drugs had been given to the patient under whom the claim was submitted.

  f. Defendants collected, at least sometimes, copayment and coinsurance payments from SBCC and AZCC patients for treatment involving, without the patients' knowledge, the injection of foreign unapproved drugs.

  g. Defendants typically stored the foreign unapproved drugs separately from those that were legally obtained, including at the residences of defendants MOHAMMAD RAY KHAN, BENJAMIN LOUSTAUNAU, and JASWINDER SHANKER, aka "Jesse", and in separate rooms and separate refrigerators at SBCC and AZCC, to conceal their scheme from other SBCC and AZCC employees and others.

  h. Defendants frequently kept the excess drug left in a single-dose or single-use vial after the drug was given to a patient, so that the drug could be given to either the same patient or a different patient in the future, while billing Medicare, Medi-Cal, and other health insurance programs as if they discarded the waste.

  i. Defendants did not inform the patients being treated at SBCC and AZCC that drugs that came from an already-used single-dose or single-use vial were being injected into their bodies.

  j. Defendants submitted, or caused to be submitted, reimbursement claims to Medicare and Medi-Cal containing false and fraudulent pretenses in that they did not disclose that the patients identified in the claims received drugs that came from an already-used single-dose or single-use vial or other container, when defendants knew

that Medicare and Medi-Cal would not pay for drugs it knew were taken from a single-dose or single-use vial or other container that was used multiple times.

  k. Defendants did not inform the patients being treated at SBCC and AZCC that expired drugs were being injected into their bodies.

  l. Defendants submitted, or caused to be submitted, reimbursement claims to Medicare and Medi-Cal containing false and fraudulent pretenses in that they did not disclose that the patients identified in the claims received expired drugs, when defendants knew that Medicare and Medi-Cal would not pay for expired drugs.

## Overt Acts

54. In furtherance of the conspiracy and to effect and accomplish the objects of it, one and more of the defendants and conspirators committed, among others, the following overt acts, in the Southern District of California and elsewhere:

  a. Paragraph 45, subparagraphs a-m, are realleged and incorporated by reference.

  b. On or about October 15, 2021, in an email chain between, among others, defendants KIRANJIT GHUMAN, aka "Kiran", SUKHJIT SINGH GHUMAN, aka "Sukhi", and BENJAMIN LOUSTAUNAU, as well as an AZCC Office Manager and a Business Manager, discussing using a JW modifier for drug wastage on Arizona Medicaid claims:

    1. Defendant KIRANJIT GHUMAN, aka "Kiran", stated, "Can we either up the dose or store the remainder of the dose in the fridge and use on other patients and bill the correct dosages."

    2. Defendant SUKHJIT SINGH GHUMAN, aka "Sukhi", stated, "We save the dose and it works fine."

      c.    On or about January 17, 2022, in response to an email from an AZCC Office Manager explaining that during an inventory, among other things, "we found plenty of expired medications" and AZCC was "reusing single dose vials []Some vials state 'Must use within 8 hours of opening vial, discard remaining portion' however the remaining portion was not discarded. (I am not sure if these vials were used for multiple patients or on different days, nothing is documented.)" Defendant SUKHJIT SINGH GHUMAN, aka "Sukhi", responded, "We also don't need to copy [AZCC's oncologist] on this."

      d.    On or about March 9, 2023, defendants submitted, and caused to be submitted, a claim for $7,740.00 to Medicare, falsely representing that patient O.H. had been administered an injection of FDA-approved trastuzumab.

      e.    On or about March 30, 2023, defendants submitted, and caused to be submitted, a claim for $7,740.00 to Medicare, falsely representing that patient O.H. had been administered an injection of FDA-approved trastuzumab.

      f.    On or about April 19, 2023, defendants submitted, and caused to be submitted, a claim for $18,750.00 to Medicare, falsely representing that patient S.M. had been administered an injection of FDA-approved rituximab.

      g.    On or about April 19, 2023, defendants submitted, and caused to be submitted, a claim for $1,250.00 to Medicare for "rituximab waste," falsely representing that excess FDA-approved rituximab prescribed to patient S.M. had been unused and discarded.

      h.    On or about April 20, 2023, defendants submitted, and caused to be submitted, a claim for $17,640.00 to Medicare, falsely

representing that patient O.H. had been administered an injection of FDA-approved pertuzumab.

      i. On or about April 20, 2023, defendants submitted, and caused to be submitted, a claim for $7,740.00 to Medicare, falsely representing that patient O.H. had been administered an injection of trastuzumab.

All in violation of Title 18, United States Code, Section 1349.

## Counts 19-24

## Health Care Fraud

## (18 U.S.C. § 1347)

55. Paragraphs 1 through 54 are realleged and incorporated by reference.

56. Beginning no later than September 2019 and continuing through in or around April 2023, within the Southern District of California, and elsewhere, defendants SUKHJIT SINGH GHUMAN, aka "Sukhi", KIRANJIT GHUMAN, aka "Kiran", MOHAMMAD RAY KHAN, JOSHUA SCHWASS, and BENJAMIN LOUSTAUNAU, knowingly and willfully executed and attempted to execute a scheme and artifice to defraud, and obtain by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by and under the custody and control of, Medicare and Medi-Cal, health care benefit programs as defined in Title 18, United States Code, Section 24(b), in connection with the delivery of and payment for health care benefits, items, and services.

### EXECUTIONS OF THE SCHEME

57. On or about the dates listed in the table below, within the Southern District of California and elsewhere, defendants SUKHJIT SINGH GHUMAN, aka "Sukhi", KIRANJIT GHUMAN, aka "Kiran", MOHAMMAD RAY KHAN,

JOSHUA SCHWASS, and BENJAMIN LOUSTAUNAU, for the purpose of executing the scheme, knowingly caused the following bills for reimbursement to be submitted to Medicare:

| Count | Claim Submittal Date & Date of Service | Patient's Initials & Claim Number | CPT Code | Procedure Description | Amount Billed |
|---|---|---|---|---|---|
| 19 | 3/9/2023; 3/8/2023 | O.H.; 551823068002580 - line # 2 | J9355 | Injection, trastuzumab, excludes biosimilar | $7,740.00 |
| 20 | 3/30/2023; 3/29/2023 | O.H.; 551823089066240 - line # 2 | J9355 | Injection, trastuzumab, excludes biosimilar | $7,740.00 |
| 21 | 4/19/2023; 4/6/2023 | S.M.; 551123109748960 - line # 1 | J9312 | Injection, rituximab | $18,750.00 |
| 22 | 4/19/2023; 4/6/2023 | S.M.; 551123109748960 - line # 2 | J9312-JW | Rituximab Waste | $1,250.00 |
| 23 | 4/20/2023; 4/19/2023 | O.H.; 551823110045570 - line # 1 | J9306 | Injection, pertuzumab | $17,640.00 |
| 24 | 4/20/2023; 4/19/2023 | O.H.; 551823110045570 - line # 2 | J9355 | Injection, trastuzumab, excludes biosimilar | $7,740.00 |

All in violation of Title 18, United States Code, Sections 1347 and 2, and *Pinkerton v. United States*, 328 U.S. 640 (1946).

## Count 25

**Conspiracy to Engage in the Unlawful Wholesale Distribution of Drugs and Commit Wire Fraud**

**(18 U.S.C. § 371)**

58. The introductory allegations set forth in paragraphs 1 through 40 are realleged and incorporated by reference.

59. Beginning no later than September 2021 and continuing through in or around April 2023, within the Southern District of California and elsewhere, defendants SUKHJIT SINGH GHUMAN, aka "Sukhi", KIRANJIT

GHUMAN, aka "Kiran", BENJAMIN LOUSTAUNAU, and VENIN PATEL, conspired and agreed with each other and with others known and unknown to the Grand Jury to commit one and more of the following offenses against the United States:

    a. To knowingly engage in the unlicensed wholesale distribution of prescription drugs in interstate commerce, in violation of Title 21, United States Code, Sections 331(t), 353(e)(1)(A), and 333(b)(1)(D);

    b. To commit wire fraud, that is to devise and intend to devise a scheme to defraud Cardinal Health and Oncology Supply, and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises in violation of Title 18, United States Code, Section 1343.

### Object of the Conspiracy

60. The object of the conspiracy was for defendants to unlawfully enrich themselves by purchasing drugs from medical supply wholesalers Cardinal Health and Oncology Supply for the lower prices available to healthcare providers purchasing drugs to give to their patients, but instead selling those drugs to Celtis, who would have had to pay higher prices to purchase the drugs from those wholesalers directly.

### Manner and Means of the Conspiracy

61. The conspirators used the following manner and means, among others, in pursuit of their fraudulent purpose:

    a. Conspirators associated with AZCC purchased and caused to be purchased drugs from medical supply wholesalers, agreeing to the wholesalers' terms and conditions that were meant, among other things, to prevent AZCC from reselling the drugs.

1. Conspirators purchased drugs from Oncology Supply, which imposed the following terms and conditions, among others:

> CONFIDENTIALITY. Buyer may not use or disclose Seller's trade secrets or confidential information. Pricing terms are strictly confidential and may not be disclosed to any third party or competitor of Seller unless required by law.

2. Conspirators also purchased drugs from Cardinal Health, which imposed the following terms and conditions, among others:

> Non-Wholesale customers are final dispensers that are purchasing for their own use and will not redistribute prescription pharmaceuticals to any other entity.

b. Employees of Celtis typically identified specific drugs, often described with specific NDC numbers, and sometimes specific lot numbers and expirations dates, that they were interested in buying from AZCC.

c. AZCC employees typically responded by sending information regarding the price they could purchase drugs from wholesalers, including Cardinal Health and Oncology Supply, and the markup they would charge to resell the drugs to Celtis.

d. AZCC typically marked up the price of the drugs between the price for which they could purchase the drugs and the price that Celtis would have to pay to purchase those same drugs directly from the same wholesaler.

e. Employees of Celtis then typically sent employees of AZCC a purchase order detailing what drugs they wanted AZCC to resell to them.

f. AZCC purchased the specified drugs from medical supply wholesalers, including Cardinal Health and Oncology Supply, with the

express purpose to resell those drugs to Celtis, directly in violation of the wholesalers' terms and conditions of sale.

    g.   AZCC typically then sent Celtis an invoice for the drugs they purchased from wholesalers and resold to Celtis.

    h.   Early on, AZCC would charge Celtis for the commercial shipping cost for the drugs they purchased from wholesalers, but later Celtis would pay for a shipping label for AZCC to use.

    i.   AZCC never obtained a license to act as a wholesale distributor of drugs from Arizona or Pennsylvania.

### Overt Acts

62. In furtherance of the conspiracy and to effect and accomplish the objects of it, one and more of the defendants and conspirators committed, among others, the following overt acts, in the Southern District of California and elsewhere:

    a.   On or about May 5, 2022, defendant KIRANJIT GHUMAN, aka "Kiran", emailed defendant BENJAMIN LOUSTAUNAU asking for an updated spreadsheet regarding Celtis, so that she could advise defendant SUKHJIT SINGH GHUMAN, aka "Sukhi", of the profit to date.

    b.   On or about May 9, 2022, defendant KIRANJIT GHUMAN, aka "Kiran", emailed defendant SUKHJIT SINGH GHUMAN, aka "Sukhi", that she and defendant BENJAMIN LOUSTAUNAU "have spoken today regarding a call with [defendant VENIN PATEL]. Please can you confirm you are happy for us to give [defendant VENIN PATEL] access to our Cardinal account so he can go and see availability of products and prices. This way we are hoping he will look at alternatives and place the order. [Defendant BENJAMIN LOUSTAUNAU] is currently going back and forth with $ and we are

only meeting 20-30% of [PATEL's] requests due to availability. Without this [PATEL] advised we may not be able to continue."

   c. On or about May 23, 2022, after defendant VENIN PATEL stated that he had not been given access to AZCC's Cardinal account, defendant SUKHJIT SINGH GHUMAN, aka "Sukhi", emailed defendants KIRANJIT GHUMAN, aka "Kiran", and BENJAMIN LOUSTAUNAU that it was "fine" to give defendant VENIN PATEL the login information for AZCC's Cardinal accounts for oncology products and non-oncology products.

   d. On or about July 22, 2022, defendant BENJAMIN LOUSTAUNAU emailed defendants VENIN PATEL and SUKHJIT SINGH GHUMAN, aka "Sukhi", and an employee of Celtis, the price that AZCC would charge Celtis per pack for seven drugs, as requested by Celtis.

   e. On or about August 4, 2022, defendant BENJAMIN LOUSTAUNAU emailed defendant VENIN PATEL, and an employee of Celtis, the price at which that AZCC could purchase nine drugs from AmerisourceBergen, as requested by Celtis.

   f. On or about August 23, 2022, defendant KIRANJIT GHUMAN, aka "Kiran", emailed a copy of an invoice for Celtis' purchase of seven drugs from AZCC for $97,569.03, including shipping charges, to defendants BENJAMIN LOUSTAUNAU and VENIN PATEL, as well as two other Celtis employees.

   g. On or about August 31, 2022, defendant BENJAMIN LOUSTAUNAU emailed defendant KIRANJIT GHUMAN, aka "Kiran", the cost AZCC paid for 13 drugs sold to Celtis in three purchase orders, and the price AZCC charged Celtis for those drugs.

h. On or about November 4, 2022, Celtis paid defendant BENJAMIN LOUSTAUNAU $4,000 as a commission for the drugs that AZCC sold to Celtis.

i. On or about January 25, 2023, defendant VENIN PATEL caused to be sent a purchase order from Celtis to AZCC for three lots of Abraxane for $325,117.26.

j. On or about February 8, 2023, defendant KIRANJIT GHUMAN, aka "Kiran", authorized the sale of 136 units of the drug Prolia (nonproprietary/generic name Denosumab) to Celtis for $190,326.56.

k. On or about February 20, 2023, defendant VENIN PATEL caused to be sent a purchase order from Celtis to AZCC for eight drugs, including Coly-Mycin, for $446,699.74.

l. On or about February 20, 2023, a Celtis employee emailed defendant KIRANJIT GHUMAN, aka "Kiran", and others a table listing the eight drugs with the prices that Colton and Celtis could purchase the drugs for, the difference between the two prices, and dividing that difference into "Celtis Share" and "Colton Share." defendant KIRANJIT GHUMAN, aka "Kiran", forwarded that email to defendant BENJAMIN LOUSTAUNAU and stated, "Please see below and advise if this is correct and worth doing."

m. On or about February 24, 2023, defendant VENIN PATEL emailed defendants BENJAMIN LOUSTAUNAU and KIRANJIT GHUMAN, aka "Kiran", and others, indicating his priorities for which drugs he wanted AZCC to purchase in order to sell to Celtis, including Colymycin.

n. On or about February 27, 2023, defendant BENJAMIN LOUSTAUNAU emailed McKesson asking for 10 units of Coly-Mycin with the

same expiration date and stating, "he wants to keep in stock, but I need a long expiration date, so they don't sit."

All in violation of Title 18, United States Code, Section 371.

### Criminal Forfeiture Allegation

63. The allegations contained in Counts 1 through 32 are re-alleged and by their reference fully incorporated herein for the purpose of alleging forfeiture to the United States of America pursuant to the provisions of Title 18, United States Code, Sections 981(a)(1)(C), 982(a)(2)(B), 982(a)(7), and Title 28, United States Code, Section 2461(c).

64. Upon conviction of one and more of the offenses of this Indictment indicated in the following table, and pursuant to the statutes listed in that table, defendants shall forfeit to the United States all property constituting, or derived from, any proceeds defendants obtained, directly or indirectly, as the result of the offenses, including, but not limited to, the real property located at 9457 East Adobe Drive, Scottsdale, Arizona:

| Counts | Statutes Justifying Forfeiture |
|---|---|
| 1 (Conspiracy) | Title 18, U.S.C., Sec. 981(a)(1)(C), and Title 28, U.S.C., Sec. 2461(c) |
| 2-9 (18 U.S.C. 545) | Title 18, U.S.C., Sec. 982(a)(2)(B) |
| 10-17 (21 U.S.C. §§ 331(d), 355(a), and 333(a)(2); | Title 18, U.S.C., Sec. 982(a)(7) |
| 18 (Conspiracy) | Title 18, U.S.C., Sec. 981(a)(1)(C), and Title 28, U.S.C., Sec. 2461(c) |
| 19-24 (18 U.S.C. 1347, 1349) | Title 18, U.S.C., Sec. 982(a)(7) |
| 25 (Conspiracy) | Title 18, U.S.C., Sec. 981(a)(1)(C), and Title 28, U.S.C., Sec. 2461(c) |

65. If any of the above-described forfeitable property, as a result of any act or omission of defendants:

    a. cannot be located upon the exercise of due diligence;
    b. has been transferred or sold to, or deposited with, a third party;
    c. has been placed beyond the jurisdiction of the Court;
    d. has been substantially diminished in value; or
    e. has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), Title 18, United States Code, Section 982(b), and Title 28, United States Code, Section 2461(c), to seek forfeiture of any other property of defendants up to the value of the property listed above as being subject to forfeiture.

All pursuant to Title 18, United States Code, Sections 981(a)(1)(C), 982(a)(2)(B), and 982(a)(7), and Title 28, United States Code, Section 2461(c).

DATED: September 29, 2023.

A TRUE BILL:

[redacted]

ANDREW R. HADEN
Acting United States Attorney

By: _____
GEORGE MANAHAN
Assistant U.S. Attorney

40